Presented to the Court by the foreman of the Grand Jury in open Court, in the presence of the Grand Jury and FILED in the U.S. DISTRICT COURT at Seattle, Washington.

___January 25___, 20_23_
Ravi Subramanian, Clerk
By _____ Deputy

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FATIU ISMAILA LAWAL and<br>SAKIRU OLANREWAJU AMBALI,<br><br>Defendants. | NO. CR23-5034 RJB<br><br>**INDICTMENT** |

The Grand Jury charges that:

## COUNT 1

**(Conspiracy to Commit Wire Fraud)**

A. Overview

1. These charges involve the participation of FATIU ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI, together and with those known and unknown to the Grand Jury, in a conspiracy to use stolen identities of American workers and taxpayers to fraudulently obtain United States government funds, including COVID-19 pandemic unemployment benefits, pandemic assistance for small businesses, and federal tax refunds. In connection with the conspiracy, LAWAL, AMBALI, and their co-

Indictment - 1
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspirators possessed and used the stolen personal identifying information of over 14,700 American workers and taxpayers.

2. Specifically, LAWAL and AMBALI, both Nigerian nationals and Canadian residents, and their co-conspirators used these stolen identities to submit over 1,700 claims for COVID-19 pandemic-related unemployment benefits to over 25 state workforce agencies and over 2,300 fraudulent tax returns to the Internal Revenue Service. LAWAL, AMBALI, and their co-conspirators also used stolen personal identifying information of Americans to seek pandemic assistance from the United States Small Business Administration. In so doing, LAWAL and AMBALI, together and with their co-conspirators, caused, and attempted to cause, state and federal agencies to pay out approximately $25 million in American government funds. They successfully obtained over $2.4 million, primarily from COVID-19 pandemic unemployment benefits. This included approximately $253,000 paid by the Washington Employment Security Department.

**B.    Relevant Programs**

3. **CARES Act and COVID-19 Unemployment Benefits.** On March 27, 2020, the United States enacted into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The CARES Act authorized approximately $2 trillion in aid to American workers, families, and businesses to mitigate the economic consequences of the COVID-19 pandemic. The CARES Act funded and authorized each state to administer new unemployment benefits. These benefits included: (1) Federal Pandemic Unemployment Compensation, which provided a benefit of $600 per week per unemployed worker in addition to existing benefits; (2) Pandemic Unemployment Assistance, which extended benefits to self-employed persons, independent contractors, and others; and (3) Pandemic Emergency Unemployment Assistance, which extended benefits for an additional 13 weeks after regular unemployment benefits were exhausted.

Indictment - 2
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4. CARES Act unemployment benefits were funded by the United States government through the Department of Labor and administered at the state level by state agencies known as state workforce agencies (SWAs). The Washington Employment Security Department (ESD) is the SWA for the State of Washington.

5. CARES Act unemployment benefits were authorized, transferred, disbursed and paid in connection with a nationwide emergency declared by Presidential Proclamation 9994 (effective as of March 1, 2020) and a Presidential declaration of a major disaster for the State of Washington concerning the COVID-19 pandemic that was issued on March 22, 2020. On August 8, 2020, to further assist American workers suffering from the economic impacts of the COVID-19 pandemic, the President authorized the Federal Emergency Management Agency to expend up to $44 billion from disaster relief funds for the Lost Wage Assistance Program (LWAP) to provide an additional $300 per week to workers who were unemployed because of COVID-19.

6. SWAs allow applicants to apply online for state-administered unemployment benefits. For example, in Washington, applicants can apply online for ESD-administered benefits by visiting ESD's Unemployment Tax and Benefit (UTAB) system via an online portal called eServices. To access eServices, the applicant must first set up an account with the state's SecureAccess Washington (SAW) web-based identity validation system.

7. **COVID-19 Economic Injury Disaster Loans.** The CARES Act also authorized the United States Small Business Administration (SBA) to provide assistance through the Economic Injury Disaster Loan (EIDL) program. The EIDL program provides low-interest financing to small businesses and non-profit organizations in regions affected by declared disasters. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage

Indictment - 3
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

payments. The CARES Act authorized eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic to receive EIDLs of up to $2 million.

8. A qualifying business applying for an EIDL must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge. SBA directly disburses funds issued under an EIDL to an account identified by the applicant.

9. **Tax Refunds.** The Internal Revenue Service is an agency of the United States Department of Treasury and is responsible for administrating the tax laws of the United States. An individual who is a citizen or resident of the United States and earned income during a calendar year in excess of a threshold amount is obligated to file an individual tax return with the IRS for that calendar year. If the taxpayer paid more in taxes (for example through employer withholdings or quarterly payments) than was due for a given year, the taxpayer may request that a refund be paid by electronic wire transfer to a bank account designated by the taxpayer. The IRS relies in part on the taxpayer's tax return to determine whether a refund is due.

C. **Use of Interstate Wires.**

10. The processes for applying for and receiving the government payments discussed above involve the use of interstate wire transmissions. For example, applications for ESD-administered unemployment benefits involve at least the following three types of interstate or foreign wire transmissions: when the SAW system sends an activation email to an email server outside the State of Washington, when a user accesses UTAB on eServices from outside the State of Washington, and when ESD initiates a benefit payment.

Indictment - 4
United States v. Lawal et al.
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11. **SAW.** The SAW website is hosted at the State Data Center in Olympia, Washington. To establish a SAW account, an applicant must provide the SAW system with an email address. The SAW system then sends an activation link to the designated email account by wire transmission originating in Olympia, Washington. The user must click on the link to activate his or her SAW account. When the user uses an email server outside the State of Washington, the SAW system uses an interstate wire each time it sends an activation email.

12. **eServices.** After activating the SAW account, the user may use the SAW account to access ESD's UTAB application system through eServices. The eServices website is also hosted at the State Data Center in Olympia, Washington. To file a claim through eServices, the applicant enters his or her personal identifying information (PII), to include name, date of birth, and Social Security number. When the applicant accesses or submits the application through eServices from outside the State of Washington, his or her electronic device sends an interstate wire transmission terminating at the State Data Center in Olympia, Washington.

13. **Payment.** In UTAB, the applicant may designate a bank or financial account to receive the unemployment benefits, and ESD pays these benefits via wire (ACH) transfer. When ESD disburses unemployment benefits, ESD sends an interstate wire communication from Olympia, Washington, to a KeyBank processing center, directing KeyBank to make the benefit payment. KeyBank does not have any processing centers within Washington State. Therefore, every ESD benefits payment results in an interstate wire communication that originates in Washington and travels to another state.

**D.    The Conspiracy**

14. Beginning at a time unknown but no later than on or about February 2, 2018, and continuing through at least on or about November 11, 2022, at Olympia, in Thurston County, within the Western District of Washington, and elsewhere, FATIU

Indictment - 5
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI, together with others known and unknown to the Grand Jury, did conspire, confederate and agree, together and with each other, to commit the offense of wire fraud in violation of Title 18, United States Code, Section 1343. That is, FATIU ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI, together with others known and unknown, with intent to defraud, agreed to knowingly devise a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises. To execute and attempt to execute the scheme and artifice to defraud, FATIU ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI, together with others known and unknown, knowingly transmitted, and caused to be transmitted by wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds.

15. The object of the conspiracy was to use stolen identities of American workers, residents, and taxpayers to fraudulently obtain United States government funds, including COVID-19 pandemic unemployment benefits, pandemic assistance for small businesses, and tax refunds.

16. The wire fraud that was the object of this conspiracy occurred in relation to, and involved, benefit payments authorized, transmitted, transferred, disbursed, and paid in connection with the presidentially-declared major disaster and emergency described in Paragraph 5 of this Indictment.

E.   **Manner and Means**

The following conduct was part of the conspiracy:

17.   **Use of Stolen Personal Identifying Information.** LAWAL, AMBALI, and their co-conspirators unlawfully obtained, possessed, and shared with one another the names, dates of birth, Social Security numbers, and other PII of American workers and taxpayers, including residents of the State of Washington.

Indictment - 6
United States v. Lawal et al.
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18. LAWAL, AMBALI, and their co-conspirators used Telegram and other encrypted messaging services to instruct one another how to obtain and use stolen PII to fraudulently obtain United States government funds. Telegram is an encrypted, cloud-based, centralized instant messaging system that is accessible from electronic devices such as smartphones, tablets, and computers. Telegram uses a "distributed infrastructure" to deliberately evade disclosure of data to third parties, including governments. Its features include a channel function that allows an administrator to post to a public or private feed that broadcasts to an unlimited number of subscribers.

19. LAWAL, AMBALI, and their co-conspirators used at least one Telegram channel that instructed its subscribers how to: purchase stolen PII from the channel administrator or use tools that scrape the internet for PII; submit fraudulent unemployment benefit claims to various SWAs across the nation, including ESD; and mask IP addresses to evade detection. The channel also provided tutorials on how to use stolen PII to defraud other COVID-19 benefit programs such as the SBA's EIDL program and the Treasury's Emergency Rental Assistance Program.

20. **Use of Deceptive Email Accounts.** LAWAL, AMBALI, and their co-conspirators created and maintained over a dozen email accounts for the purpose of participating in fraudulent transactions while obscuring their identities. LAWAL, AMBALI, and their co-conspirators primarily used accounts administered by Google LLC, with domain names ending in gmail.com and googlemail.com, and email addresses linked to private domains administered by Namecheap, a domain name registrar and web hosting company.

21. LAWAL, AMBALI, and their co-conspirators, using foreign and interstate wire transmissions, accessed ESD's SAW portal and eServices, as well as similar portals of SWAs for at least 25 other states, including New York, Maryland, Michigan, Nevada, and California. Each time LAWAL, AMBALI, or a co-conspirator accessed the

Indictment - 7
United States v. Lawal et al.
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington SAW portal and eServices, he or she caused wire transmissions terminating and originating at the State Data Center in Olympia, Washington.

22. To establish SAW accounts, LAWAL, AMBALI, and their co-conspirators provided email addresses to ESD to receive activation emails. Each time LAWAL, AMBALI, or a co-conspirator input an email address into the SAW system, an activation email was sent to the email account. Each of these emails was sent via an interstate wire transmission originating from the State Data Center in Olympia, Washington and passing through either a Google or Namecheap data center outside the State of Washington.

23. To prevent ESD and other SWAs from recognizing that the same email account or user was filing file multiple claims, LAWAL, AMBALI, and their co-conspirators used hundreds of variants of each email address.

24. For the Google accounts, LAWAL, AMBALI, and their co-conspirators placed periods at different locations within the email address for each claim. For example, LAWAL, AMBALI, and their co-conspirators opened SAW accounts and submitted claims using the variants "G.AM.E.W.O.R.K393@GMAIL.COM," "G.A.M.EWO.RK393@GMAIL.COM," and "G.AMEWORK3.93@GMAIL.COM." In routing emails to a gmail.com or googlemail.com account, Google disregards periods within the email address (e.g., "john.doe@gmail.com" is routed to the same account as "johndoe@gmail.com"). As a result, Google delivered all of these emails (and any similar "dot variants" of the same address) to the gamework393@gmail.com account.

25. By using these email address variants, LAWAL, AMBALI, and their co-conspirators were able to file hundreds of claims using the same email account, without ESD and other SWAs detecting that they were doing so. LAWAL, AMBALI, and their co-conspirators used the following 13 Google accounts, and others, and their dot variants, to file over 900 COVID-19 pandemic unemployment benefits: gamework393@gmail.com, bankupdates2014@gmail.com, js755642@gmail.com,

Indictment - 8
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

vac22334@gmail.com, onlinefacebookprogs2016@gmail.com, seritdavis@googlemail.com, js8979767@gmail.com, tailorjames23@gmail.com, nwork654@gmail.com, billyjeanolowo@gmail.com, harveynaomi0@gmail.com, kimphillips059@gmail.com, and nationarmstrong@gmail.com.

26. Beginning in approximately December 2020, LAWAL became the registered owner of at least four internet domain names used to fraudulently obtain American government funds. LAWAL, AMBALI, and their co-conspirators created a single email mailbox for each domain through a private email service provided by Namecheap, which also hosted each domain. The private email service has features that allow users to funnel an unlimited number of email addresses associated with a registered domain to a single inbox for that domain. For example, k@sensormargin.com, h@sensormargin.com, and r@sensormargin.com were among the hundreds of sensormargin.com emails LAWAL, AMBALI, and their co-conspirators used to file COVID-19 unemployment claims with SWAs across the nation. But because LAWAL created a single mailbox for the domain sensormargin.com, all of the emails associated with the domain were delivered to a single inbox.

27. Using these private email service features, LAWAL, AMBALI, and their co-conspirators used approximately 800 different email addresses associated with one of four domain names—sensormargin.com, minderpower.com, redfoxdna.com, or unitedgsat.com—to submit fraudulent claims to SWAs. Each email address appeared unique to the SWA but was ultimately routed to the single inbox for each domain.

28. **Other Fraudulent Submissions.** LAWAL, AMBALI, and their co-conspirators, used stolen personal identifying information of American residents and some of the same email accounts and domains described in Paragraphs 24-27, and others to seek EIDL proceeds and other assistance from SBA that were intended to assist small businesses suffering during the COVID-19 pandemic.

Indictment - 9
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

29. Between on or about February 2, 2018, and November 11, 2022, LAWAL, AMBALI, and their co-conspirators, using some of the same and additional email accounts and domain names described in Paragraphs 24-27, used the stolen identities of American taxpayers to electronically file over 2,300 fraudulent tax returns without the taxpayers' knowledge. The fraudulent tax returns falsely claimed tax refunds and requested that those refunds be deposited to accounts under the control of the defendants or their co-conspirators. In total, LAWAL, AMBALI, and their co-conspirators sought over $7.1 million in tax refunds and obtained approximately $30,000.

30. **Dissipation of Proceeds.** When completing the applications for pandemic unemployment benefits, LAWAL, AMBALI, and their co-conspirators directed some of the benefits be paid to online payment accounts, including accounts administered by MovoCash, Inc. LAWAL, AMBALI, and their co-conspirators also directed fraudulent benefits to be loaded onto debit cards issued by banks and mailed to addresses in the United States or deposited into bank accounts controlled by persons known as "money mules," who withdrew and transferred the funds according to instructions given by LAWAL, AMBALI, and their co-conspirators.

31. LAWAL, AMBALI, and their co-conspirators also used stolen identities to open bank accounts specifically for the purpose of receiving fraudulent COVID-19 benefits. For example, LAWAL, AMBALI, and their conspirators directed benefits from at least 10 claims submitted to Washington and other SWAs to a common bank account. These 10 claims used dot variant email addresses of four different Google accounts. The bank account was opened online on or about March 31, 2020, using the stolen identity of F.B, and received deposits exclusively from Washington and New York SWAs that were withdrawn through ATMs and postal money orders, before the bank closed the account on or about June 11, 2020, due to suspicious activities.

All in violation of Title 18, United States Code, Section 1349.

Indictment - 10
United States v. Lawal et al.
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNTS 2-11

### (Wire Fraud)

32. The Grand Jury incorporates by reference Paragraphs 1-31 of this Indictment as if fully set forth herein.

33. Beginning at a time unknown, but no later than on or about February 2, 2018, and continuing through at least on or about November 11, 2022, at Olympia, in Thurston County, within the Western District of Washington, and elsewhere, FATIU ISMAILA LAWAL, SAKIRU OLANREWAJU AMBALI, and others known and unknown, with intent to defraud, knowingly devised a scheme and artifice to defraud, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

34. The essence of the scheme and artifice to defraud was to use stolen identities of American workers and taxpayers to fraudulently obtain United States government funds, including COVID-19 pandemic unemployment benefits from state workforce agencies, assistance for small businesses from the United States Small Business Administration, and tax refunds from the United States Department of Treasury. The scheme and artifice to defraud occurred in relation to, and involved, benefit payments authorized, transmitted, transferred, disbursed, and paid in connection with a presidentially-declared major disaster and emergency.

35. On or about the dates set forth below, for the purpose of executing and attempting to execute this scheme and artifice to defraud, FATIU ISMAILA LAWAL, SAKIRU OLANREWAJU AMBALI, and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly transmit and cause to be transmitted, by wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, each transmission of which constitutes a separate count of this Indictment. Each of the following offenses was committed in furtherance of, and was a foreseeable part of, the conspiracy charged in Count 1 of this Indictment.

Indictment - 11
United States v. Lawal et al.
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Approximate Date | Applicant Initials | Wire Transmission |
|---|---|---|---|
| 2 | May 2, 2020 | R.R. | SecureAccess Washington account activation email from State Data Center in Olympia, Washington to vac.2.2334@gmail.com via a Google server outside of Washington |
| 3 | May 7, 2020 | C.A. | Wire from outside Washington to State Data Center in Olympia, Washington to submit an application via eServices for ESD benefits using the email address g.a.mewor.k.3.9.3@gmail.com |
| 4 | May 8, 2020 | S.C. | SecureAccess Washington account activation email from the State Data Center in Olympia, Washington to v.a.c.2.23.34@gmail.com via a Google server outside of Washington |
| 5 | May 8, 2020 | R.L. | Wire from outside Washington to State Data Center in Olympia, Washington to submit an application via eServices for ESD benefits using the email address o.nl.i.nef.a.c.e.bookprogs2016@gmail.com |
| 6 | May 12, 2020 | B.E. | Wire from Washington to another state to initiate ACH transfer of approximately $8,530 in ESD benefits |
| 7 | May 13, 2020 | B.E. | Wire from Washington to another state to initiate ACH transfer of approximately $1,390 in ESD benefits |
| 8 | May 13, 2020 | T.G. | Wire from Washington to another state to initiate ACH transfer of approximately $1,580 in ESD benefits |
| 9 | May 14, 2020 | P.S. | Wire from outside Washington to State Data Center in Olympia, Washington to submit an application via eServices for ESD benefits using the email address o.nlinef.aceb.ookprogs2016@gmail.com |

Indictment - 12
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| | | | |
|---|---|---|---|
| 10 | May 17, 2020 | L.S | Wire from outside Washington to State Data Center in Olympia, Washington to submit an application via eServices for ESD benefits using the email address o.n.l.i.ne.face.b.ookprogs2016@gmail.com |
| 11 | August 6, 2021 | D.B. | Wire from outside Washington to State Data Center in Olympia, Washington to submit an application via eServices for ESD benefits using the email address berry9360@minderpower.com |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 12-17

### (Aggravated Identity Theft)

36. The Grand Jury incorporates by reference Paragraphs 1-35 of this Indictment as if fully set forth herein.

37. On or about the dates set forth below, at Olympia, in Thurston County, within the Western District of Washington, and elsewhere, FATIU ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI, knowingly transferred, possessed, and used, without lawful authority, means of identification of other persons, and did aid and abet the same, in that FATIU ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI submitted claims to the Washington Employment Security Department using the names, dates of birth, and Social Security numbers, of the persons with the initials listed below, during and in relation to felonies listed in Title 18, United States Code, Section 1028A(c), to wit, conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349, and wire fraud in violation of Title 18, United States Code, Section 1343. Each of the following offenses was committed in furtherance of, and was a foreseeable part of, the conspiracy charged in Count 1 of this Indictment.

//

//

Indictment - 13
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Count | Date | Initials of Victim |
|-------|------|--------------------|
| 12 | May 6, 2020 | D.H. |
| 13 | May 9, 2020 | J.C. |
| 14 | May 10, 2020 | S.S. |
| 15 | May 11, 2020 | M.H. |
| 16 | May 11, 2020 | T.G. |
| 17 | May 17, 2020 | J.S. |

All in violation of Title 18, United States Code, Section 1028A(a)(1) and 2.

## FORFEITURE ALLEGATION

The allegations contained in Counts 1–11 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. Upon conviction of any of the offenses alleged in Counts 1–11 of this Indictment, defendants FATIU ISMAILA LAWAL and SAKIRU OLANREWAJU AMBALI, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any property that constitutes or is traceable to proceeds of the offense. This property includes, but is not limited to, a sum of money reflecting the proceeds the defendant obtained from the offense.

**Substitute Assets.** If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or,

e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property of the

Indictment - 14
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

defendants, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL:

DATED: January 25, 2023

*[Signature of Foreperson redacted pursuant to the policy of the Judicial Conference of the United States]*

FOREPERSON

NICHOLAS W. BROWN
United States Attorney

ANDREW C. FRIEDMAN
Assistant United States Attorney

CINDY CHANG
Assistant United States Attorney

SETH WILKINSON
Assistant United States Attorney

Indictment - 15
*United States v. Lawal et al.*
USAO No. 2022R00205

UNITED STATES ATTORNEY
700 STEWART STREET
SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970