HON. DAVID W. CHRISTEL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR23-5034RJB |
| Plaintiff, | |
| v. | DEFENSE MEMORANDUM IN SUPPORT OF MR. AMBALI'S RELEASE |
| SAKIRU OLANREWAJU AMBALI, | |
| Defendant. | |

## I.   SUMMARY

Sakiru Ambali is accused of fraud and aggravated identity theft. He has no criminal history and he has strong ties to the community in which he lives. Mr. Ambali is a Nigerian national, who, along with his two children, has legal permanent residence status in Canada. His children are currently residing in Ontario and eagerly await his return. Given the nature of his charges, Mr. Ambali is presumptively releasable under the Bail Reform Act. The Court should release him. The government is expected to argue that Mr. Ambali is a flight risk, in part because he was born in Nigeria. But Mr. Ambali is just like most parents, meaning the last thing that he would want is to return to Nigeria and be out of his children's life. He can be trusted to be released. The Court should order his release on his own recognizance, with the requirement that he check in periodically with the probation office, either telephonically or by video conference.

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

## II. MR. AMBALI HAS A STRONG MOTIVATION TO ATTEND TO THIS CASE, NAMELY TO CARE TO HIS CHILDREN. HE ALSO HAS A SOLID RELEASE ADDRESS.

As noted, Mr. Ambali is a Nigerian national. He first arrived in Canada in January, 2017, and received Canadian legal permanent resident status in October 2018. He was arrested for this case on Feb 21, 2023 while in Germany, where he had coordinated with family to accompany two of his children on their journey into Canada for the first time after obtaining their Canadian legal permanent residence status. His children are 12 and 15 years old, and are now living with a friend in Canada. Both of Mr. Ambali's kids love soccer. His daughter wants to be a lawyer. His son wants to be an engineer. They miss their father very much, and he misses them. Mr. Ambali wishes to guide his children forward in life while he resolves this case. He also worries that if he does not return to Canada by the end of this month, he may lose his permanent resident status. He of course wants to preserve that status so he can raise his children and watch them grow.

Mr. Ambali has no interest in returning to Nigeria, as that country suffers from much unrest. Mr. Ambali has described life in Nigeria as being like "living in a jungle because there is no security. . . . you can't even close your eyes . . . . you can't sleep." The United States government essentially agrees, as it advises Americans to reconsider any travel to the Country "due to crime, terrorism, civil unrest, kidnapping, and armed gangs."[1] Likewise, the Canadian government advises against all non-essential travel to Nigeria "due to the unpredictable security situation throughout the country and the

---

[1] Nigeria Travel Advisory, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/nigeria-travel-advisory.html#:~:text=Nigeria%20%2D%20Level%203%3A%20Reconsider%20Travel&text=Updated%20with%20return%20to%20full,Some%20areas%20have%20increased%20risk (last accessed November 14, 2023);

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

significant risk of terrorism, crime, inter-communal clashes, armed attacks, and kidnappings."[2]

Mr. Ambali proposes living with a good friend in Ontario, Canada: Opeyemi Taylor. He has known Ms. Taylor for over nine years. Ms. Taylor could also be endorsed as a third-party custodian, obligated to inform the Court should anything go amiss. Mr. Ambali submits that he should be allowed to return to Canada so that he can live peacefully with his children in, as he calls it, "a place where there is hope and one can dream."

### III. THE BAIL REFORM ACT PRESUMES RELEASE ON THESE CHARGES.

"[U]nder the Bail Reform Act of 1984, as amended, Congress has determined that any person charged with an offense under the federal criminal laws shall be released pending trial, subject to appropriate conditions. . . ." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). In passing the BRA, Congress intended that detainees would constitute only "a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons" S. Rep. No. 225, 98th Cong., 1st Sess. 6-7 (1983), *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3189. Accordingly, "[o]nly in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *Santos-Flores*, at 1090 (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)).

Under the BRA, the government bears the burden of showing that a defendant poses a danger to the community by clear and convincing evidence, and it bears the

---

[2] Nigerian Travel Advice, https://travel.gc.ca/destinations/nigeria (last accessed November 14, 2023).

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  burden of showing that a defendant poses a flight risk by a preponderance of the

2  evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991); 18 U.S.C.

3  § 3142(f). Proof of clear and convincing evidence provides a high hurdle:

> "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that [the asserted factual contentions are] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir. 2004) (*quoting Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984)).

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1020 (9th Cir. 2018) (brackets in *OTR Wheel Eng'g*).

In this case, if the government is to detain Mr. Ambali on a dangerous theory, it much show by clear and convincing evidence that he presents an unmanageable risk of obstruction, or of threatening, injuring or intimidating a prospective witness of juror. 18 U.S.C. § 3142(f)(2)(B).[3] There is absolutely no suggestion of any such things. Because of this, Mr. Ambali's detention is only appropriate if the government can prove by a preponderance of the evidence that he poses a flight risk that is unmanageable by any condition or combination of conditions. *Motamedi*, 767 F.2d at 1407. Because release conditions need only provide reasonable assurances, as opposed to guarantees, *United States v. Hir*, 517 F.3d 1081, 1092 n.9 (9th Cir. 2008), the government cannot meet this burden either.

**IV.  MR. AMBALI CAN BE SAFELY RELEASED TO CANADA, AS HAS BEEN DONE IN OTHER CASES.**

The Court can be reasonably assured that it can release Mr. Ambali and that Mr. Ambali will abide by whatever conditions the Court imposes. No credible argument can

---

[3] The government may advance a danger to the "economic safety" of the community. But as set forth in detail below, that argument has no currency.

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  be made that he is a danger to anyone. And his family ties provide strong assurances
2  that he will attend to his court obligations.
3        This would hardly be the first case in which a federal district court released a
4  Canadian resident and allowed him to stay in Canada, except for court appearances. In
5  *United States v. Andrade*, the court issued Mr. Andrade an appearance bond, allowing
6  him to reside in Canada, with the requirements that he report to Pretrial Services weekly
7  by telephone, monthly in person at the United States Customs office the border, and any
8  time he entered Washington State. Dkt. 11, no. 19-0090-RSM (W.D. Wash, May 6,
9  2019). Counsel is informed that Mr. Andrade complied with all conditions of release;
10 he ultimately pled guilty, returned to court facing a government recommendation of six
11 months, and was sentenced to time served. Dkt. 45 (Dec. 17, 2022), dkt. 54 (Feb. 25,
12 2022).
13       In *United States v. Satnam Dhillon*, Mr. Dhillon was similarly allowed to
14 continue to live in Canada. His then-counsel, now an attorney with this Office of the
15 Federal Public Defender, reports that he complied with all conditions of release; he
16 ultimately pled guilty, appeared in court for sentencing facing a government
17 recommendation of 33 months, and was also sentenced to time served. *See* dkt. 6, 21-
18 20618-TGB-EAS-1 (E.D. Mich., Dec. 17, 2022) (April 20, 2020), dkt. 34 (June 11,
19 2022); dkt. 21 (August 5, 2022).
20       The USPO has indicated that it would be difficult for Mr. Ambali to meet a
21 USPO representative at the border because the probation office for the Western District
22 of New York does not provide those services.[4] That should not frustrate Mr. Ambali's
23 release since, as set forth above, he has strong motivations to remain in contact with
24 counsel and the Court. Because of this, he could be safely released on his own

---

[4] USPO Supp. Rpt. at 3.

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 5

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

recognizance. Alternatively, the Court could impose other conditions, such as electronic monitoring, designating Ms. Taylor as a third-party custodian, and frequent telephonic or video "check-ins" with the assigned WDWA probation officer.

Despite the successes of *Andrade* and *Dhillon*, the government and the USPO are expected argue that Mr. Ambali should not be released, contending that he cannot be reasonably relied upon to make future court experiences because he has ties to Nigeria, could face deportation proceedings in Canada, and it might be difficult for him to reenter this country once released. None of these rationales should prevent Mr. Ambali's release.

As argued above, his misfortune of being born in Nigeria should not be held against him. He has no desire to return there, and for good reason. The Court should not equate a theoretical potential for flight to an inclination for flight, especially when the circumstances on the ground – namely a desire to remain with his children in a safe country – provide a motivation not to flee. *See Troung Dinh Hung v. United States*, 439 U.S. 1326, 1339 (1978) (noting that even if foreign ties might "suggest opportunities for flight, they hardly establish any inclination on the part of the applicant to flee.").

Nor should any potential deportation hearing deprive him of the protections afforded by the BRA. First, the defense has no information suggesting that any deportation hearing has been initiated. But even if one were to be, the actions of a federal government in civilly detaining an individual under immigration law is not a basis for denying release. The Ninth Circuit has forcefully made that point relevant to ICE detainers: "[T]he risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." *United States v. Santos-Flores*, 794 F. 3d 1088, 1092 (9th Cir. 2015). Thus, the speculative fear of removal by ICE or a Canadian immigration authority does not constitute grounds for denying Mr. Ambali's release.

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1	Nor is there any reason to deny Mr. Ambali's release based on the idea that he
2	could face bureaucratic hurdles in returning to this country for Court appearances. As
3	noted in the USPO's supplemental report, Mr. Ambali can be paroled into this country
4	from Canada for those appearances.[5] While this may be a cumbersome process, it is a
5	workable one. And as noted by *Santos-Flores*, for a risk a non-appearance to weigh
6	against release under the BRA, that risk must be the product of a volitional act of the
7	accused person, not the product of a bureaucratic impediment that can be worked
8	through. *See Santos-Flores*, 794 F. 3d at 1092. Thus, his having to be paroled into this
9	country does not weigh against his release.

10	Finally, the government and the USPO are expected to contend that the nature of
11	charges suggest that Mr. Ambali should be viewed as presenting a risk of "risk of
12	financial danger", USPO Supp. Rpt. at 2 (Nov. 14, 2023), or a risk to the "economic
13	safety of the community." Motion for Detention, dkt. 12 at 2.

14	The terms "financial danger" and "economic safety of the community" appear
15	nowhere in the text of BRA. The Court should not rewrite the BRA to insert these
16	modifiers into the statute, since the statutory text otherwise suggests the sort of danger
17	that relates to the physical safety of others. *See* 18 U.S.C. § 3142(f) ("The judicial
18	officer shall hold a hearing to determine whether any condition or combination of
19	conditions . . . will reasonable assure . . . the safety of any other person or the
20	community").

21	Indeed, in this case, where the alleged crimes do not fall within the enumerated
22	offenses of 18 U.S.C. § 3142(f)(1), the Court is only empowered to hear a motion for
23	detention if the case involves "a serious risk that such person will obstruct justice, or
24	threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective

---

[5] USPO Supp. Rpt. at 3.

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 7

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

witness or juror." 18 U.S.C. § 3142(f)(2)(B). The government's motion for detention filed at the initial appearance alleged none of those things, since no credible evidence of obstruction, threats or intimidation can be leveled against Mr. Ambali. Instead, the government asserted only that Mr. Ambali presented a risk to flight in the "Eligibility [for detention]" section of its motion. Dkt. 12 at 1. Given the utter absence of obstruction, threat, injury or intimidation evidence, it would be wholly improper to detain Mr. Ambali based on any theory of danger, let alone a creative economic danger to the community theory. The Third Circuit addressed this issue in *United States v. Himler*, and squarely the decided the point in favor of the defense:

> Mr. Himler's case does not involve any of the offenses specified in subsection (f)(1), nor has there been any claim that he would attempt to obstruct justice or intimidate a witness or juror. Accordingly, we hold that the statute does not authorize the detention of the defendant based on danger to the community from the likelihood that he will if released commit another offense involving false identification. Any danger which he may present to the community may be considered only in setting conditions of release. He may be detained only if the record supports a finding that he presents a serious risk of flight.

*United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986)

Even assuming that an economic risk of danger could be properly considered, the government's argument would still fail since it would elevate the government's view of the weight of the evidence from the least important factor, *see Motamedi*, 767 F.2d at 1407, to a factor so powerful that it would override the presumption of innocence and mandate detention in nearly every fraud case. The government is essentially arguing that any time a party is accused of a fraud offense, they should not only be assumed to guilty, but presumed to be unrepentant and hell-bent on continuing such offenses, despite the fact that engaging in any such future criminal behaviors would likely result in swift detention, a longer prison sentence than what would

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 8

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

otherwise be the case, and a lengthier separation from one's family. Adoption of his theory would effectively eviscerate the presumption of innocence, contrary to the BRA. *See* 18 U.S.C. § 3142(j). Further evidence that adopting the government's argument would be unjust can be seem from the fact that it rests on a false premise that an accused is likely to reoffend. In fact, the vast, *vast* majority of pretrial supervisees present no problems upon release. *See generally* Thomas H. Cohen, Ph.D., U.S. Dept. of Justice, Bur. of Statistics, Pretrial Release and Misconduct in Federal District Courts, 2008-2010 (Nov. 2012) (noting that only 1 % of fail to appear and only 4% are arrested for new offenses).

## V.    CONCLUSION

The government cannot meet its burden of proving the necessity of Mr. Ambali's continued detention. He should therefore be released.

DATED this 14th day of November, 2023

Respectfully submitted,

s/ *John R. Carpenter*
Assistant Federal Public Defender
Attorney for Sakiru Olanrewaju Ambali

I certify that this memorandum contains 2,554 words and is in compliance with the Local Criminal Rules

DEFENSE MEMORANDUM IN SUPPORT OF
MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710