HON. DAVID W. CHRISTEL

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR23-5034RJB |
| Plaintiff, | ) | |
| | ) | DEFENSE SUPPLEMENTAL |
| v. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | MR. AMBALI'S RELEASE |
| SAKIRU OLANREWAJU AMBALI, | ) | |
| Defendant. | ) | |

## I. SUMMARY OF ARGUMENT

Sakiru Ambali argued for his release during a hearing held on November 13, 2023. As noted in earlier briefing, Mr. Ambali is a Nigerian national, who, along with his two children, has legal permanent residence status in Canada. He has sought his release to join his children in Canada.

Mr. Ambali is charged with fraud offenses. By the terms of the Bail Reform Act, the government is not entitled to a detention hearing for Mr. Ambali unless it can demonstrate that there is a "serious risk that [Mr. Ambali] will flee." *See* 18 U.S.C. § 3142(f)(2)(B).[1]

The Court called for supplemental briefing regarding the evidentiary standard related to the sole gatekeeping criterion applicable to this case. Consistent with constitutional guarantees of due process, Ninth Circuit precedent that generally places a heightened standard on the government's burden under the BRA, and the case of *United*

---

[1] The government conceded at the November 13, 2023 hearing that it was not arguing that it could meet the other gatekeeping provision of the BRA that could potentially entitle it to a detention hearing in a fraud case, namely, a serious risk of obstruction of justice. *See* 18 U.S.C. § 3142(f)(2)(B).

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 1

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

*States v. Figueroa-Alvarez*, No. 4:23-CR-00171-DCN, 2023 WL 4485312 (D. Idaho July 10, 2023), a case cited by the Court, Mr. Ambali submits that question must be resolved under a clear and convincing evidentiary standard. But even if a clear preponderance of the evidence standard were used, the government would not be entitled to a detention hearing, since there is no serious risk that Mr. Ambali will flee.

Mr. Ambali has an extremely strong motivation to faithfully attend to his court obligations, since that is the safest path to preserve his legal permanent residence status in Canada and to be present in his children's lives. The government did not offer any concrete evidence to rebut this motivation, in order to show that it was entitled to a detention hearing. Its arguments rested primarily on its view of the weight of the evidence and the argument that Mr. Ambali would face bureaucratic hurdles to reenter the United States. The weight of the evidence, however, is the least important factor to weigh when deciding release and cannot in and of itself be deemed to create a serious risk of flight. And bureaucratic hurdles are not even a proper consideration, since a "serious risk" that Mr. Ambali "will flee" necessarily requires proof of a serious risk that Mr. Ambali will actively and intentionally seek to avoid his court obligations. Because the government has failed to show that is it entitled to an evidentiary hearing, the Court should release Mr. Ambali on his own recognizance.

**II.    TO BE ENTITLED TO A DETENTION HEARING IN THIS CASE, THE GOVERNMENT MUST SHOW A SERIOUS RISK THAT MR. AMBALI WILL FLEE BY CLEAR AND CONVINCING EVIDENCE. BECAUSE IT CANNOT MEET THAT STANDARD, OR EVEN A LESSER STANDARD OF CLEAR PREPONDERANCE, MR. AMBALI MUST BE RELEASED.**

   **A.    The government must establish by clear and convincing evidence that the standard for a detention hearing has been met; at a minimum, the standard is clear preponderance.**

At the last hearing, the Court questioned whether the strong language of the gateway criterion applicable in this case – a "serious risk that such person will flee" –

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 2

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

conferred a greater burden upon the government than other wording contained within the Bail Reform Act, namely that related to conditions that would "reasonably assure the appearance [of an accused person]." *Compare* 18 U.S.C. § 3142(f)(2)(B) *with* § 3142(f) and § 3142(g). The defense is aware of no binding precedent that has explicitly decided what standard should apply to the § 3142(f)(2)(B) question. The defense submits that the burden should be that of clear and convincing evidence.

The analysis in a recent law review article maintains that the proper standard to decide whether detention is ever appropriate should be clear and convincing, not preponderance. Jaden M. Lessnick, *Pretrial Detention by A Preponderance: The Constitutional and Interpretive Shortcomings of the Flight-Risk Standard*, 89 U. Chi. L. Rev. 1245 (2022) ("*Pretrial Detention*"). Lessnick reaches this conclusion based on several points. Most relevant here is an application of the factors set forth in *Mathews v. Elridge*, 424 U.S. 319 (1976), to determine what procedures comport with due process prior to a deprivation by the government. These three factors are: the interests of the party, the likelihood of an erroneous outcome under the procedural scheme at issue, and the government's interest in maintaining that procedure. 424 U.S. at 341-348. Application of each of these factors shows why an elevated evidentiary standard should govern § 3142(f)(2)(A) as well as § 3142(e) and (g) (the subjects of the *Pretrial Detention* article).

First, the harm to the individual from a wrongful outcome at a detention hearing is obviously quite high, given potential job and housing losses, and the impact that detention has on family relationships and community ties, plus, of course, the

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 3

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

experience of being incarcerated. Detention has also been shown to effect the outcome of the criminal proceeding.[2]

Second, there is a significant risk of a wrongful determination under a preponderance standard. That is in part due to the very definition of "preponderance," which allows for detention even if there is a nearly 50% chance that detention is not warranted. In addition, the extraordinarily high rate of compliance for released defendants (only 1% of released defendants failed to appear[3], which is true both in districts with high release rates and those with low release rates[4]) contributes to the risk that detention may have been unnecessary (and thus wrongful). *Pretrial Detention* at 1262-1268.

Finally, since the government interest does not encompass danger to the community from releasing the defendant (because that interest is not a factor under the statute unless the alleged basis for detention is one of the offenses listed in 18 U.S.C. § 3142(f)(1)[5]), its interest is relatively low (because, for example, a defendant who absconds is likely to ultimately be found[6]). *Pretrial Detention* at 1268-1271.

---

[2] *See* Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis* 60-72 (2022) ("Freedom Denied"), available at https://perma.cc/D4CG-XWEB; *Pretrial Detention* at 1258-1262.

[3] Department of Justice, *Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011–2018*, March 2022 ("*Pretrial Release*"), Table 10, available at https://bjs.ojp.gov/content/pub/pdf/prmfdcfy1118.pdf.

[4] *Freedom Denied* at 25.

[5] *See, e.g.*, *Figueroa-Alvarez*, 2023 WL 4485312, at *7.

[6] Stephanie Holmes Didwania, *Discretion and Disparity in Federal Detention*, 115 Nw. U. L. Rev. 1261, 1319 (2021) ("In the information age, it is difficult for a person to completely abscond").

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 4

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

*Pretrial Detention* then turns to the language of the statute. Although the article is dealing with another portion of the BRA, namely that governing the ultimate detention proceeding, it is still of relevance to the issue before this Court. The article first reviews legislative history showing that Congress intended the standard justifying detention to be the same for flight risk as for dangerousness: namely Congress intended that a clear and convincing standard apply to both. *Pretrial Detention* at 1274-75. Various factors suggest that Congress's silence on the standard for flight-risk does not suggest a different standard from dangerousness. *Id.* at 1278. The structure of the BRA also supports applying the same standard. *Id.* at 1279. In addition, the courts had applied a higher-than-preponderance standard in the prior version of the BRA (which allowed consideration only of flight risk), *id.* at 1279-80, suggesting that Congress intended the same standard in the revised BRA. All of this makes good sense, given the risks that attend to a wrongful determination of detention. Those risks are particularly acute for crimes that are not serious enough in and of themselves to warrant consideration of detention, which is precisely the situation addressed by § 3142(f)(2).

Further, although *Pretrial Detention* is focused on the standard applicable for the ultimate detention hearing, its *Mathews* analysis still has relevance here. Very significant costs attach to any detention, regardless of the duration of that detention. *Freedom Denied* at 70-73 (detailing impact of even a few days' detention on jobs, finances, and custody of children). Because of this, the need for the clear and convincing standard argued for in *Pretrial Detention* for the ultimate detention hearing applies with equal force to what standard should apply under § 3142(f)(2)(A).

Second, the risk of a wrongful determination remains high under a preponderance standard for the very same reasons. A preponderance standard means

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 5

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

that there is a nearly 50% chance of a wrongful deprivation. This is not a risk that should be casually taken, especially when one considers that 99% of those released under the BRA appear in court[7], which includes many who were released over government objection.[8]

Finally, the government interest in having Mr. Ambali detained is relatively low. By the statute's terms, the only government interest in this situation pertains to the risk of non-appearance, not of a danger to the community. And if a defendant were to fail to appear, it is quite likely the government will be able to locate him.[9]

The Court should thus apply a clear and convincing standard in reviewing whether the government has presented sufficient evidence of flight risk to warrant a detention hearing. If the Court concludes otherwise, it should at least apply a "clear preponderance" standard.

The Ninth Circuit has a long history of applying a heightened evidentiary standard to protect the rights of potential detainees. It is for this reason that it adopted a clear preponderance standard to a finding regarding a risk of non-appearance, even

---

[7] *See* n.3, *supra*.

[8] Counsel has been unable to find data directly reflecting when release was over the government's objection. However, the data in *Pretrial Release* shows that nearly one-third of defendants who were released did not obtain release at their initial appearance but only "at a later hearing, such as a detention or bond hearing." *Id.* at 1. It seems safe to assume that, for the overwhelming majority of this group, the government sought detention, and no doubt a significant portion of those released at the initial appearance were also released over government objection.

[9] The government might argue that having the same standard at the gatekeeping stage as at the ultimate detention hearing would make the subsequent hearing superfluous. The government made that very argument in *Figueroa-Alvarez*, and the court rightly rejected it. *See id.*, 2023 WL 4485312 at *5 n.5 (explaining that "a detention hearing involves more than just demonstrating risk of non-appearance," namely whether and what conditions would reasonably assure the defendant's presence.

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 6

**FEDERAL PUBLIC DEFENDER**
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

1  without addressing the stronger language of § 3142(f)(2)(B). *See United States v.*
2  *Montamedi*, 767 F.2d 1403, 1407 (9th Cir.1985); *see also United States v. Townsend*,
3  897 F.2d 989, 994 (9th Cir. 1990); *United States v. Djoko*, No. CR19-0146-JCC, 2019
4  WL 4849537, at *2 (W.D. Wash. Oct. 1, 2019) (applying "clear preponderance"
5  standard, quoting *Lopez-Valenzuela v. Cty. of Maricopa*, 719 F.3d 1054, 1065 (9th Cir.
6  2013), *on rehearing en banc*, *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772 (9th Cir.
7  2014)); *United States v. Bryant*, No. 3:23-CR-5196-BHS, 2023 WL 6215335, at *2
8  (W.D. Wash. Sept. 25, 2023); *United States v. Banda*, No. 123CR00106ADABAM,
9  2023 WL 5596442, at *2 (E.D. Cal. Aug. 29, 2023); *United States v. Kane*, No. 3:20-
10 MJ-5054 TLF, 2020 WL 1660058, at *3 (W.D. Wash. Apr. 3, 2020); *United States v.*
11 *Fanyo-Patchou*, 426 F. Supp. 3d 779, 783 (W.D. Wash. 2019).

12      There is a distinct difference between a preponderance standard and a "clear
13 preponderance" standard. The latter standard shows up in various area of the law,
14 sometimes as established by statute, other times through case law.[10] "Clear
15 preponderance" is a standard that "straddle(s) the line between clear and convincing
16 evidence and preponderance of the evidence." *In re Charges of Jud. Misconduct*, 769
17 F.3d 762, 767 (D.C. Cir. 2014). It has been equated to the statutory standard of "clearly
18 establish." *Clark v. Comm'r*, 45 T.C.M. (CCH) 144 (T.C. 1982). As *Clark* explains, "A
19 'clear preponderance' of the evidence means something more positive and explicit, as
20 opposed to inferences to be drawn from ambiguous and equivocal proof." *Id.*

21      The discussion in *Clark*, requiring positive and explicit evidence rather than
22 inferences from ambiguous proof, corresponds well with *United States v. Figueroa-*

---

[10] *See, e.g.*, *GCIU-Emp. Ret. Fund v. MNG Enterprises, Inc.*, 51 F.4th 1092, 1097 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2665 (2023) (reviews of pension plan arbitrations); *N.L.R.B. v. Mike Yurosek & Son, Inc.*, 53 F.3d 261, 265 (9th Cir. 1995) (review of credibility determinations by the NLRB and other agencies); *Knochelmann v. Comm'r*, 455 F. App'x 536, 539 (6th Cir. 2011) (standard under certain Treasury Regulations).

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 7

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

*Alvarez*, No. 4:23-CR-00171-DCN, 2023 WL 4485312 (D. Idaho July 10, 2023), a case that the Court cited to the parties. There, the court required "*concrete information* that demonstrates that the alien defendant poses a great risk that he or she will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." (Emphasis added.)

      **B.**    **To obtain a hearing under § 3142(f)(2)(A), the government must demonstrate "a great risk that [the defendant] will intentionally and actively" move to avoid appearing in court.**

*Figueroa-Alvarez*, which apparently has the most detailed analysis on the issue, concluded that the accused is entitled to an "individualized assessment" of risk that necessarily requires the government to present "*concrete information* that demonstrates that the alien defendant poses a *great risk* that he or she will *intentionally and actively* move within or outside the jurisdiction to avoid court proceedings or supervision." 2023 WL 4485312 at *13 (emphasis added). The court pointed to the language in § 3142(f)(2)(A)'s statement of the requirement for holding a detention hearing – "serious risk that such person will flee – as compared to that applicable in any detention hearing, namely § 3142(g)'s reference to assuring the appearance of the defendant. The court pointed to the principle that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* at *4 (citation omitted). The court concluded that "risk of flight is distinguishable from, and more narrow than, risk of non-appearance." *Id.* at *5. It summarized its conclusion by stating that "a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision."

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 8

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

Notably, even under the broader concept of "non-appearance" in § 3142, the Ninth Circuit has required that any non-appearance "must involve an element of volition." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). Thus, under *Santos-Flores*, the risk that ICE might deport a defendant is simply irrelevant to whether conditions of release will reasonably assure his appearance. *Id.* Of course, the requirement of "fleeing" in § 3142(f)(2)(A) is narrower than many forms of volitional non-appearance, since the latter encompasses simply staying put and declining to come to court. The difference between the two concepts is heightened even further by § 3142(f)(2)(A)'s requirement of a "serious" risk, while the balancing under § 3142(e) and (g) looks only to a reasonable assurance of appearance (and thus an unreasonable risk of non-appearance).

In short, the third-party and bureaucratic risks that the USPO and the government have referred to – that Canada might detain or deport Mr. Ambali, or that either Canada or the United States will interfere with Mr. Ambali returning to court – are not risks this Court should consider in deciding whether to order a detention hearing. Instead, the Court should only order a hearing if the government can demonstrate a serious risk that Mr. Ambali will flee on his own accord. Given his strong desire to remain a lawful permanent resident with his children, the government will be unable to meet that burden. As noted in earlier briefing, the government's argument that he has the capacity to flee cannot be equated with an intent to flee.[11] If it could, everyone would have to be detained.

---

[11] *See* Defense Memorandum in Support of Mr. Ambali's Release at 6 (dkt. 27, citing *Troung Dinh Hung v. United States*, 439 U.S. 1326, 1339 (1978) for the proposition that even if foreign ties might "suggest opportunities for flight, they hardly establish any inclination on the part of the applicant to flee.").

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 9

FEDERAL PUBLIC DEFENDER
1331 Broadway, Suite 400
Tacoma, WA 98402
(253) 593-6710

**III. CONCUSION.**

The Court should rule that the government failed to meet its burden of showing a serious risk that Mr. Ambali will flee. Accordingly, it should order his release.

DATED this 21st day of November, 2023

Respectfully submitted,

s/ *John R. Carpenter*
Assistant Federal Public Defender
Attorney for Sakiru Olanrewaju Ambali

DEFENSE SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MR. AMBALI'S RELEASE
(*United States v. Ambali*, CR23-5034RJB) - 10

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA 98402**
**(253) 593-6710**