The Honorable Robert J. Bryan



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SAKIRU OLANREWAJU AMBALI,

Defendant.

NO. CR23-5034-02 RJB

**PLEA AGREEMENT**

The United States, through Acting United States Attorney Tessa M. Gorman and Assistant United States Attorney Cindy Chang of the Western District of Washington, and Defendant Sakiru Olanrewaju Ambali and Defendant's attorney John R. Carpenter enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(1)(B).

1.    **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to each of the following charges contained in the Indictment:

1      a.      Wire Fraud, as charged in Count 5, in violation of Title 18, United

2      States Code, Section 1343; and

3      b.      Aggravated Identity Theft, as charged in Count 15, in violation of

4      Title 18, United States Code, Section 1028A.

5      By entering pleas of guilty, Defendant hereby waives all objections to the form of

6      the charging document.  Defendant further understands that before entering any guilty

7      plea, Defendant will be placed under oath.  Any statement given by Defendant under oath

8      may be used by the United States in a prosecution for perjury or false statement.

9      2.      **Elements of the Offenses**.  The elements of the offense(s) to which

10     Defendant is pleading guilty are as follows:

11     a.      The elements of Wire Fraud, as charged in Count 5, in violation of

12     Title 18, United States Code, Section 1343, are as follow:

13     *First*, the defendant knowingly participated in, or devised, a scheme or plan

14     for obtaining money or property through false or fraudulent pretenses, representations or

15     promises;

16     *Second*, the promises, statements, or representations were material, that is,

17     they had a natural tendency to influence a person to part with money or property;

18     *Third*, the defendant acted with the intent to defraud;

19     *Fourth*, the defendant used, or caused to be used, the wires in interstate or

20     foreign commerce to carry out or attempt to carry out an essential part of the scheme; and

21     *Fifth*, the violation occurred in relation to, or involved, benefit payments

22     authorized, transmitted, disbursed or paid in connection with a presidentially-declared

23     major disaster or emergency.

24     b.      The elements of Aggravated Identity Theft, as charged in Count 15,

25     in violation of Title 18, United States Code, Section 1028A, are as follow:

26     *First*, the defendant knowingly transferred, possessed, or used, without

27     legal authority, a means of identification of another person;

Plea Agreement - 2
*United States v. Ambali*, CR23-5034-RJB-02

1    *Second*, the defendant knew the means of identification belonged to a real

2    person; and

3    *Third*, the defendant did so during and in relation to the crime of wire fraud.

4    3.    **The Penalties**.  Defendant understands that the statutory penalties

5    applicable to the offense(s) to which Defendant is pleading guilty are as follows:

6    a.    For the offense of wire fraud, as charged in Count 5:  A term of

7    imprisonment of up to 30 years, a fine of up to $1,000,000, a period of supervision

8    following release from prison of up to five years, and a mandatory special

9    assessment of 100 dollars.  If a probationary sentence is imposed, the probationary

10   period can be for up to five years.

11   b.    For the offense of aggravated identity theft, as charged in Count 15:

12   A mandatory term of imprisonment of two years, which must be consecutive to

13   any other sentence, a fine of up to $250,000, a period of supervision following

14   release from prison of up to one year, and a mandatory special assessment of 100

15   dollars.

16   Defendant understands that supervised release is a period of time following

17   imprisonment during which Defendant will be subject to certain restrictive conditions and

18   requirements.  Defendant further understands that, if supervised release is imposed and

19   Defendant violates one or more of the conditions or requirements, Defendant could be

20   returned to prison for all or part of the term of supervised release that was originally

21   imposed.  This could result in Defendant serving a total term of imprisonment greater

22   than the statutory maximum stated above.

23   Defendant understands that as a part of any sentence, in addition to any term of

24   imprisonment and/or fine that is imposed, the Court may order Defendant to pay

25   restitution to any victim of the offense, as required by law.

26

27

Plea Agreement - 3
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      Defendant further understands that the consequences of pleading guilty may
2  include the forfeiture of certain property, either as a part of the sentence imposed by the
3  Court, or as a result of civil judicial or administrative process.

4      Defendant agrees that any monetary penalty the Court imposes, including the
5  special assessment, fine, costs, or restitution, is due and payable immediately and further
6  agrees to submit a completed Financial Disclosure Statement as requested by the United
7  States Attorney's Office.

8      Defendant understands that, if pleading guilty to a felony drug offense, Defendant
9  will become ineligible for certain food stamp and Social Security benefits as directed by
10  Title 21, United States Code, Section 862a.

11      4.      **Immigration Consequences**.  Defendant recognizes that pleading guilty
12  may have consequences with respect to Defendant's immigration status if Defendant is
13  not a citizen of the United States.  Under federal law, a broad range of crimes are grounds
14  for removal, and some offenses make removal from the United States presumptively
15  mandatory.  Removal and other immigration consequences are the subject of a separate
16  proceeding, and Defendant understands that no one, including Defendant's attorney and
17  the Court, can predict with certainty the effect of a guilty plea on immigration status.
18  Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any
19  immigration consequences that Defendant's guilty pleas may entail, even if the
20  consequence is Defendant's mandatory removal from the United States.

21      5.      **Rights Waived by Pleading Guilty.**  Defendant understands that by
22  pleading guilty, Defendant knowingly and voluntarily waives the following rights:

23            a.      The right to plead not guilty and to persist in a plea of not guilty;

24            b.      The right to a speedy and public trial before a jury of Defendant's
25  peers;

26

27

Plea Agreement - 4
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        c.      The right to the effective assistance of counsel at trial, including, if

2  Defendant could not afford an attorney, the right to have the Court appoint one for

3  Defendant;

4        d.      The right to be presumed innocent until guilt has been established

5  beyond a reasonable doubt at trial;

6        e.      The right to confront and cross-examine witnesses against Defendant

7  at trial;

8        f.      The right to compel or subpoena witnesses to appear on Defendant's

9  behalf at trial;

10       g.      The right to testify or to remain silent at trial, at which trial such

11  silence could not be used against Defendant; and

12       h.      The right to appeal a finding of guilt or any pretrial rulings.

13      6.    **United States Sentencing Guidelines**.  Defendant understands and

14  acknowledges that the Court must consider the sentencing range calculated under the

15  United States Sentencing Guidelines and possible departures under the Sentencing

16  Guidelines together with the other factors set forth in Title 18, United States Code,

17  Section 3553(a), including:  (1) the nature and circumstances of the offense(s); (2) the

18  history and characteristics of Defendant; (3) the need for the sentence to reflect the

19  seriousness of the offense(s), to promote respect for the law, and to provide just

20  punishment for the offense(s); (4) the need for the sentence to afford adequate deterrence

21  to criminal conduct; (5) the need for the sentence to protect the public from further

22  crimes of Defendant; (6) the need to provide Defendant with educational and vocational

23  training, medical care, or other correctional treatment in the most effective manner; (7)

24  the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the

25  need to avoid unwarranted sentence disparity among defendants involved in similar

26  conduct who have similar records.  Accordingly, Defendant understands and

27  acknowledges that:

a.     The Court will determine Defendant's Sentencing Guidelines range at the time of sentencing;

b.     After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

c.     The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

d.     Defendant may not withdraw a guilty plea solely because of the sentence imposed by the Court.

7.     **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

8.     **Statement of Facts**. Defendant admits Defendant is guilty of the charged offenses. The parties agree on the following facts, and further agree that all of these facts constitute relevant conduct under the United States Sentencing Guidelines:

a.     *Overview.* Defendant Sakiru Ambali is a Nigerian national and Canadian resident. Ambali was the operator of various accounts, including the accounts with the email addresses onlinefacebookprogs2016@gmail.com, seritdavis@gmail.com, and larrysmith0004@mail.com.

b.     Ambali and his co-conspirator, Nigerian national and Canadian resident Fatiu Lawal, obtained the personal identifying information (PII), to include names, dates of birth, and Social Security numbers, of more than 14,700 unwitting Americans. Amabli and Lawal obtained this stolen PII using unlawful means, including through purchases facilitated on Telegram.

c.     As discussed below, beginning at the onset of the COVID-19 pandemic, Ambali and Lawal used this stolen PII to submit more than 1,700 claims for

1    COVID-19 pandemic unemployment benefits in over 25 states, to submit fraudulent

2    applications for small business assistance, and to submit over 2,300 fraudulent claims for

3    tax refunds.  Ambali personally participated in the submission of over 630 fraudulent

4    claims seeking American government funds and caused government agencies to pay at

5    least $1,035,107, primarily from COVID-19 pandemic unemployment benefits.

6         d.    ***Fraudulent Pandemic Unemployment Benefit Claims.***  On March

7    27, 2020, the United States enacted into law the Coronavirus Aid, Relief, and Economic

8    Security (CARES) Act.  The CARES Act authorized approximately $2 trillion in aid to

9    American workers, families, and businesses to mitigate the economic consequences of

10   the COVID-19 pandemic.  The CARES Act funded and authorized each state to

11   administer new unemployment benefits.  These benefits included: (1) Federal Pandemic

12   Unemployment Compensation, which provided a benefit of $600 per week per

13   unemployed worker in addition to existing benefits; (2) Pandemic Unemployment

14   Assistance, which extended benefits to self-employed persons, independent contractors,

15   and others; and (3) Pandemic Emergency Unemployment Assistance, which extended

16   benefits for an additional 13 weeks after regular unemployment benefits were exhausted.

17        e.    CARES Act unemployment benefits were funded by the United

18   States government through the Department of Labor and administered at the state level

19   by state agencies known as state workforce agencies (SWAs).  The Washington

20   Employment Security Department (ESD) is the SWA for the State of Washington.

21        f.    CARES Act unemployment benefits were authorized, transferred,

22   disbursed and paid in connection with a nationwide emergency declared by Presidential

23   Proclamation 9994 (effective as of March 1, 2020) and a Presidential declaration of a

24   major disaster for the State of Washington concerning the COVID-19 pandemic that was

25   issued on March 22, 2020.  On August 8, 2020, to further assist American workers

26   suffering from the economic impacts of the COVID-19 pandemic, the President

27   authorized the Federal Emergency Management Agency to expend up to $44 billion from

Plea Agreement - 7
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 disaster relief funds for the Lost Wage Assistance Program (LWAP) to provide an

2 additional $300 per week to workers who were unemployed because of COVID-19.

3             g.        SWAs allow applicants to apply online for state-administered

4 unemployment benefits.  For example, in Washington, applicants can apply online for

5 ESD-administered benefits by visiting ESD's Unemployment Tax and Benefit (UTAB)

6 system via an online portal called eServices.  To access eServices, the applicant must first

7 set up an account with the state's SecureAccess Washington (SAW) web-based identity

8 validation system.

9             h.        Beginning in or about March 2020, and continuing until at least

10 December 2021, Ambali accessed ESD's UTAB and SAW websites, as well as the online

11 application platforms for other SWAs.  Ambali then personally submitted at least 620

12 claims for pandemic unemployment benefits using the stolen PII of at least 620 American

13 workers.  These fraudulent claims caused SWAs to pay over $1 million in pandemic

14 unemployment benefits, including funds from LWAP.  Ambali used the

15 onlinefacebookprogs2016@gmail.com, seritdavis@gmail.com,

16 larrysmith0004@mail.com email, and other email accounts to activate the claims.  To

17 prevent the SWAs from recognizing that a single email account was being used to submit

18 multiple claims, Amabli inserted periods at various places in the Gmail addresses.

19             i.        As one example of this conduct, as charged in Count 5, on about

20 May 8, 2020, Ambali activated a claim using the email address

21 o.nl.i.nef.a.c.e.bookprogs2016@gmail.com, which caused Washington State to send an

22 email via interstate wire transfer from Olympia, Washington, to a Google server outside

23 Washington State.  Similarly, as charged in Count 15, Amabli, without lawful authority,

24 submitted a fraudulent claim using the PII, to include name, Social Security number, and

25 date of birth, of a person with the initials M.H., a Washington resident whom Ambali

26 knew to be a real person.

27

j.    When completing the applications for pandemic unemployment benefits, Ambali, Lawal, and their co-conspirators directed some of the benefits be paid to online payment accounts, including accounts administered by MovoCash, Inc. Ambali, Lawal, and their co-conspirators also directed fraudulent benefits to be loaded onto debit cards issued by banks and mailed to addresses in the United States or deposited into bank accounts controlled by persons known as "money mules," who withdrew and transferred the funds according to instructions given by Ambali, Lawal, and their co-conspirators.  Ambali personally obtained proceeds from the fraud scheme employing these fraudulent applications.

k.    ***Fraudulent Economic Injury Disaster Loan Applications***.  The CARES Act also authorized the Small Business Administration to provide forgivable loans known as Economic Injury Disaster Loans (EIDLs) of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  Qualifying businesses applying for an EIDL must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

l.    Between about August 11, 2020 and October 6, 2021, Ambali and Lawal submitted at least 38 fraudulent EIDL applications.  The SBA denied all but one application, which resulted a payment of $2,500.

m.    ***Fraudulent Tax Refund Claims.***  Ambali also used American taxpayers' stolen PII to submit fraudulent claims for refunds from the Internal Revenue Service without the taxpayers' knowledge.  Between 2018 and 2021, Ambali, using the seritdavis@gmail.com, larrysmith0004@gmail.com, larrysmith1404@yahoo.com, and other accounts, submitted claims seeking at least eight refunds totaling over $40,000. The IRS did not pay these fraudulent claims.

Plea Agreement - 9
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    n.    ***Use of Telegram.***  Ambali, Lawal, and their co-conspirators used

2    Telegram and other encrypted messaging services to instruct one another how to obtain

3    and use stolen PII to fraudulently obtain United States government funds.  Telegram is an

4    encrypted, cloud-based, centralized instant messaging system that is accessible from

5    electronic devices such as smartphones, tablets, and computers.  Its features include a

6    channel function that allows an administrator to post to a public or private feed that

7    broadcasts to an unlimited number of subscribers.

8    o.    Ambali, Lawal, and their co-conspirators used at least one Telegram

9    channel that instructed its subscribers how to: purchase stolen PII from the channel

10   administrator or use tools that scrape the internet for PII; submit fraudulent

11   unemployment benefit claims to various SWAs across the nation, including ESD; and

12   mask IP addresses to evade detection.  The channel also provided tutorials on how to use

13   stolen PII to defraud other COVID-19 benefit programs such as the SBA's EIDL

14   program and the Treasury's Emergency Rental Assistance Program.

15   p.    Through the foregoing conduct, Ambali, with intent to defraud,

16   knowingly devised and participated in a scheme to obtain money and property by means

17   of materially false or fraudulent pretenses and representations, and used interstate wire

18   communication to carry out the scheme.  During and in relation to this scheme, Ambali

19   knowingly possessed and used, without legal authority, means of identification of persons

20   whom Ambali knew to be real people.

21   The parties agree that the Court may consider additional facts contained in the

22   Presentence Report (subject to standard objections by the parties) and/or that may be

23   presented by the United States or Defendant at the time of sentencing, and that the factual

24   statement contained herein is not intended to limit the facts that the parties may present to

25   the Court at the time of sentencing.

26   9.    **Sentencing Factors**.  The parties agree that the following Sentencing

27   Guidelines provisions apply to this case:

Plea Agreement - 10
*United States v. Ambali*, CR23-5034-RJB-02

The following provisions apply to defendant's conviction on Count 5:

      a.    A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

      b.    An increase of 14 points because the loss from the offense exceeded $550,000 but was less than $1,500,000, pursuant to USSG § 2B1.1(b)(1)(H);

      c.    An increase of two points because the offense involved 10 or more victims, pursuant to USSG § 2B1.1(b)(2)(A); and

      d.    An increase of two points because the offense involved sophisticated means and a substantial part of the offense was committed from outside the United States, pursuant to USSG § 2B1.1(b)(10)

      e.    An increase of two points because the offense involved benefits authorized under a presidentially-declared major disaster or emergency, pursuant to USSG § 2B1.1(b)(12).

The Guideline sentence for defendant's conviction on Count 15 is a period of imprisonment of 24 months, pursuant to USSG § 2B1.6 and 18 U.S.C. § 1028A.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines.  Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10.    **Zero Point Offender.**  Based on the evidence known to the United States at the time of this Plea Agreement, the United States believes Defendant may be eligible for a sentencing adjustment pursuant to the Zero Point Offender provisions at USSG § 4C1.1(a)(1)-(10). Those provisions require: (1) the defendant did not receive any criminal history points; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause

Plea Agreement - 11
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   substantial financial hardship; (7) the defendant did not possess, receive, purchase,

2   transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or

3   induce another participant to do so) in connection with the offense; (8) the instant offense

4   of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the

5   defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or

6   Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant

7   did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a

8   continuing criminal enterprise, as defined in 21 U.S.C. § 848.

9        If, at the time of sentencing, the United States is satisfied Defendant has met each

10  of these ten requirements, the United States will recommend a Zero Point Offender

11  adjustment to Defendant's sentencing range pursuant to USSG § 4C1.1(a). Defendant

12  understands, however, that the Court will ultimately decide whether Defendant qualifies

13  for any sentencing adjustment that comports with the Zero Point Offender provisions.

14       11.    **Acceptance of Responsibility.**  At sentencing, *if* the Court concludes

15  Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

16  to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

17  make the motion necessary to permit the Court to decrease the total offense level by three

18  (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the

19  United States by timely notifying the United States of Defendant's intention to plead

20  guilty, thereby permitting the United States to avoid preparing for trial and permitting the

21  Court to allocate its resources efficiently.

22       12.    **Recommendation Regarding Imprisonment**.  Pursuant to Federal Rule of

23  Criminal Procedure 11(c)(1)(B), the government agrees to recommend that the

24  appropriate term of imprisonment to be imposed by the Court at the time of sentencing is

25  a term of no more than 36 months for Count 5 and a term of 24 months for Count 15,

26  which shall run consecutive to the sentence for Count 5.  Defendant understands that this

27  is a below-Guidelines sentencing recommendation.  Defendant is free to recommend any

Plea Agreement - 12
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  sentence.  Defendant understands that this recommendation is not binding on the Court

2  and the Court may reject the recommendation of the parties and may impose any term of

3  imprisonment up to the statutory maximum penalty authorized by law.  Defendant

4  further understands that Defendant cannot withdraw a guilty plea simply because of the

5  sentence imposed by the Court.  Except as otherwise provided in this Plea Agreement,

6  the parties are free to present arguments regarding any other aspect of sentencing.

7       13.    **Restitution.**  Defendant shall make restitution in the amount of $1,035,107,

8  to state workforce agencies specified in the judgment that administered unemployment

9  benefits paid in connection with the conduct described in Paragraph 8 of this Plea

10  Agreement, with credit for any amounts already paid.

11        a.    The full amount of restitution shall be due and payable immediately

12  on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

13  defendant is unable to make immediate restitution in full and sets a payment schedule as

14  contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

15  represents a minimum payment obligation and does not preclude the U.S. Attorney's

16  Office from pursuing any other means by which to satisfy the defendant's full and

17  immediately-enforceable financial obligation, including, but not limited to, by pursuing

18  assets that come to light only after the district court finds that the defendant is unable to

19  make immediate restitution.

20        b.    Defendant agrees to disclose all assets in which Defendant has any

21  interest or over which Defendant exercises control, directly or indirectly, including those

22  held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

23  United States' investigation identifying all property in which Defendant has an interest

24  and with the United States' lawful efforts to enforce prompt payment of the financial

25  obligations to be imposed in connection with this prosecution.  Defendant's cooperation

26  obligations are:  (1) before sentencing, and no more than 30 days after executing this Plea

27  Agreement, truthfully and completely executing a Financial Disclosure Statement

Plea Agreement - 13
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     provided by the United States Attorney's Office and signed under penalty of perjury

2     regarding Defendant's and Defendant's spouse's financial circumstances and producing

3     supporting documentation, including  tax returns, as requested; (2) providing updates

4     with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within

5     seven days of the event giving rise to the changed circumstances; (3) authorizing the

6     United States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

7     providing waivers, consents or releases requested by the U.S. Attorney's Office to access

8     records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

9     inspect and copy all financial documents and information held by the U.S. Probation

10     Office; (6) submitting to an interview regarding Defendant's Financial Statement and

11     supporting documents before sentencing (if requested by the United States Attorney's

12     Office), and fully and truthfully answering questions during such interview; and (7)

13     notifying the United States Attorney's Office before transferring any interest in property

14     owned directly or indirectly by Defendant, including any interest held or owned in any

15     other name, including all forms of business entities and trusts.

16            c.      The parties acknowledge that voluntary payment of restitution prior

17     to the adjudication of guilt is a factor the Court considers in determining whether

18     Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

19       14.     **Forfeiture of Assets**. Defendant agrees to forfeit to the United States

20     immediately Defendant's right, title, and interest in any and all property, real or personal,

21     that constitutes or is derived from proceeds traceable to the offense of wire fraud, as

22     charged in Count 5 of the Indictment.  All such property is forfeitable pursuant to Title

23     18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

24     2461(c), and includes but is not limited to a judgment for a sum of money reflecting  the

25     proceeds Defendant personally obtained as a result of the offense.

26     Defendant understands and acknowledges this forfeited sum of money is separate

27     and distinct from the restitution that is ordered in this case. The United States agrees,

Plea Agreement - 14
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

however, that it will request the Attorney General apply any amounts it collects toward satisfaction of this forfeited sum to the restitution that is ordered. The United States also agrees that any amount Defendant pays toward restitution will be credited against this forfeited sum.

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which the Defendant has any interest or control, if that property constitutes or is traceable to proceeds of his commission of the wire-fraud scheme described above.

15.     **Abandonment of Contraband**.  Defendant also agrees that, if any federal law enforcement agency seized any illegal contraband that was in Defendant's direct or indirect control, Defendant consents to the federal administrative disposition, official use, and/or destruction of that contraband.

16.     **Non-Prosecution of Additional Offenses**.  As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Plea Agreement based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation, and moves to dismiss the remaining counts in the Indictment at the time of sentencing.  In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Plea Agreement.  Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

Plea Agreement - 15
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119

2  (1997).

3      17.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if

4  Defendant breaches this Plea Agreement: (a) the United States may withdraw from this

5  Plea Agreement and Defendant may be prosecuted for all offenses for which the United

6  States has evidence; (b) Defendant will not oppose any steps taken by the United States

7  to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

8  Agreement; and (c) Defendant waives any objection to the re-institution of any charges

9  that previously were dismissed or any additional charges that had not been prosecuted.

10     Defendant further understands that if, after the date of this Plea Agreement,

11  Defendant should engage in illegal conduct, or conduct that violates any conditions of

12  release or the conditions of confinement (examples of which include, but are not limited

13  to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

14  pending sentencing, and false statements to law enforcement agents, the Pretrial Services

15  Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

16  to file additional charges against Defendant or to seek a sentence that takes such conduct

17  into consideration by requesting the Court to apply additional adjustments or

18  enhancements in its Sentencing Guidelines calculations in order to increase the applicable

19  advisory Guidelines range, and/or by seeking an upward departure or variance from the

20  calculated advisory Guidelines range.  Under these circumstances, the United States is

21  free to seek such adjustments, enhancements, departures, and/or variances even if

22  otherwise precluded by the terms of the Plea Agreement.

23     18.    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

24  Defendant acknowledges that, by entering the guilty plea(s) required by this Plea

25  Agreement, Defendant waives all rights to appeal from Defendant's conviction, and any

26  pretrial rulings of the Court, and any rulings of the Court made prior to entry of the

27  judgment of conviction.  Defendant further agrees that, provided the Court imposes a

Plea Agreement - 16
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   custodial sentence that is within or below the Sentencing Guidelines range (or the

2   statutory mandatory minimum, if greater than the Guidelines range) as determined by the

3   Court at the time of sentencing, Defendant waives to the full extent of the law:

4           a.      Any right conferred by Title 18, United States Code, Section 3742,

5   to challenge, on direct appeal, the sentence imposed by the Court, including any fine,

6   restitution order, probation or supervised release conditions, or forfeiture order (if

7   applicable); and

8           b.      Any right to bring a collateral attack against the conviction and

9   sentence, including any restitution order imposed, except as it may relate to the

10  effectiveness of legal representation.

11          This waiver does not preclude Defendant from bringing an appropriate motion

12  pursuant to 28 U.S.C. § 2241, to address the conditions of Defendant's confinement or

13  the decisions of the Bureau of Prisons regarding the execution of Defendant's sentence.

14          If Defendant breaches this Plea Agreement at any time by appealing or collaterally

15  attacking (except as to effectiveness of legal representation) the conviction or sentence in

16  any way, the United States may prosecute Defendant for any counts, including those with

17  mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

18  Agreement.

19          19.     **Voluntariness of Plea**.  Defendant agrees that Defendant has entered into

20  this Plea Agreement freely and voluntarily, and that no threats or promises were made to

21  induce Defendant to enter a plea of guilty other than the promises contained in this Plea

22  Agreement or set forth on the record at the change of plea hearing in this matter.

23          20.     **Statute of Limitations**.  In the event this Plea Agreement is not accepted

24  by the Court for any reason, or Defendant breaches any of the terms of this Plea

25  Agreement, the statute of limitations shall be deemed to have been tolled from the date of

26  the Plea Agreement to:  (1) thirty (30) days following the date of non-acceptance of the

27  Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach

Plea Agreement - 17
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of the Plea Agreement by Defendant is discovered by the United States Attorney's
Office.

21.     **Completeness of Plea Agreement**.  The United States and Defendant
acknowledge that these terms constitute the entire Plea Agreement between the parties,
except as may be set forth on the record at the change of plea hearing in this matter.  This
Plea Agreement binds only the United States Attorney's Office for the Western District
of Washington.  It does not bind any other United States Attorney's Office or any other
office or agency of the United States, or any state or local prosecutor.

Dated this 18th day of December, 2023.


SAKIRU OLANREWAJU AMBALI
Defendant


JOHN R. CARPENTER
Attorney for Defendant


CINDY CHANG
Assistant United States Attorney

Plea Agreement - 18
*United States v. Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970