The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>SAKIRU OLANREWAJU AMBALI<br><br>Defendant. | NO. CR23-5034-RJB-02<br><br>UNITED STATES' SENTENCING MEMORANDUM |

Sakiru Ambali is a Canadian resident and Nigerian citizen who stole over a million dollars in pandemic relief funds that should have gone to American workers suffering from the devastating economic impacts of the COVID-19 pandemic.  His exploitation of a vulnerable time in our nation was the culmination of years of fraudulent activities—including the use of stolen American identities to submit fraudulent U.S. tax returns seeking refunds—while he lived in Nigeria and Canada.  Ambali and Fatiu Lawal, his co-conspirator and close friend of over 20 years, were well-versed in executing sophisticated frauds and had stolen the personal identifying information of more than 14,700 unwitting Americans.  At the onset of the pandemic in 2020, the pair used these stolen identities to submit more than 1,700 fraudulent claims for COVID-19 unemployment benefits in over 25 states and to submit fraudulent applications for small business assistance.  Ambali and

United States' Sentencing Memorandum - 1
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Lawal also used the stolen American identities to submit over 2,300 fraudulent U.S. tax returns seeking refunds.

The United States recommends that the Court sentence Ambali to 36 months of imprisonment for wire fraud (Count 5), to run consecutive to the mandatory 24-month sentence for aggravated identity theft (Count 15), for a total of 60 months of imprisonment. This sentence is necessary to reflect the serious nature of the offense and to deter others—particularly those who perpetrate fraud from abroad—from engaging in similar conduct. The Court should also impose the special conditions proposed by Probation, including that upon deportation, he may not reenter the United States without permission of the Department of Homeland Security. The court should further order Ambali to pay restitution in the amount of $1,035,107, as agreed upon in the Plea Agreement.

## I.      BACKGROUND

### A.      Ambali Has Been Defrauding the United States Since at Least 2018.

Sakiru Ambali is a seasoned fraudster who maintained multiple email accounts to perpetrate various sophisticated fraud schemes. *See, e.g.,* PSR at ¶¶ 9, 16. Several of these accounts used variations of the username "Larry Smith," such as larrysmith1404@yahoo.com, larrysmith0004@mail.com, larrysmith1404@gmail.com, and larrysmith14044@gmail.com. All of these accounts are linked by a common recovery phone number and email addresses belonging to Ambali. According to subscriber information obtained during the course of this investigation, three of these accounts were created in 2016 and one in 2017.

Since at least February 2018, Ambali used two of the Larry Smith accounts to file fraudulent U.S. tax returns using stolen American identities and seeking refunds totaling approximately $6,000. *See id.* at ¶ 21. During the pandemic, he filed additional returns seeking refunds using another account he used for fraudulent purposes, seritdavis[@]gmail.com. *Id.* In total, he filed at least eight fraudulent tax returns using stolen identities and seeking refunds totaling over $40,000. *Id.*

United States' Sentencing Memorandum - 2
*United States v. Sakiru Ambali,* CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**B.    Ambali Stole Funds Intended for American Workers Suffering From the Economic Impacts of the COVID-19 Pandemic.**

Although Ambali did not appear to reap any monetary benefit from his submission of fraudulent tax returns, his perpetration of fraud against the United States and its residents culminated at the onset of the COVID-19 pandemic.  In March 2020, following presidential declarations of a nationwide emergency and major disasters in every state, the federal government enacted measures to mitigate the devasting economic impact the COVID-19 pandemic was exacting on American workers and businesses.  *Id.* at ¶ 12.  Among these measures was federal funding for expanded and increased unemployment benefits administered by state workforce agencies, including the Washington Employment Security Department (ESD).  *Id.* at ¶ 13.

Between May 7, 2020 and at least until December 12, 2021, Ambali personally used his cache of stolen identities to submit over 630 fraudulent claims for pandemic unemployment benefits in the names of over 630 American workers to at least 21 state workforce agencies across the country, including Washington's ESD.  *Id.* at ¶ 11.  Ambali used at least four different email accounts to submit the claims, including at least two Gmail accounts:  onlinefacebookprogs2016@gmail.com   and   seritdavis@gmail.com.    To circumvent fraud safeguards and prevent the state workforce agencies from recognizing that a single email account was being used for hundreds of claims, Ambali inserted periods at various places in the email addresses, e.g., o.nl.i.ne.f.a.ce.bookprogs2016@gmail.com.  *Id.* at ¶ 16-17.  To further evade detection, Ambali used tools that routed his submissions through IP addresses located within the United States.

Washington was one of the first states in the nation to implement federal pandemic unemployment benefits, and Ambali directed his earliest efforts in May 2020 to submitting fraudulent applications to Washington's ESD.  At least a dozen of the stolen Washington identities Ambali used on these applications belonged to public servants at state and local government agencies and entities. Within a month, Ambali filed approximately 35

fraudulent claims and caused ESD to disburse benefits totaling approximately $131,000 for about half of them.  Over the next 18 months, Ambali submitted hundreds of fraudulent claims in 20 additional states.  In total, Ambali caused state workforce agencies to disburse over $1 million in pandemic unemployment benefits.  *Id.* at ¶ 16.

Ambali and his co-conspirators directed unemployment benefits to be paid to money mules in the United States who then withdrew and transferred the funds according to instructions given by Ambali and his co-conspirators.  *Id.* at ¶ 18.

**C.    Ambali's Expenditures Increased Exponentially During Commission of the Offenses.**

Because the United States has limited avenues for obtaining financial records located abroad, the government does not have a comprehensive analysis of Ambali's finances.  Nevertheless, relying on the contents of Ambali's personal email account that the government lawfully obtained during the course of its investigation, Ambali's expenditures increased dramatically during the commission of the charged offenses while his reported annual income from Uber fell to less than $4,000 in 2021.  Therefore, the government disputes Ambali's claim that he only received $6,000 from his criminal conduct.  *See id.* at ¶ 26.

According to the PSR, Ambali's employment from 2019 until 2023 was driving for Uber, and Ambali reported making up to $5,000 per month.  *Id.* at ¶ 69.  According to Uber statements found in Ambali's email account, Ambali earned approximately CA$55,000 in 2019.  Ex. A at 1.  However, his Uber income plummeted to CA$17,842.73, or approximately US$13,000, in 2020.  *Id.* at 2.  For January through November 2021, Ambali earned a mere CA$4,408.39, or approximately US$3,261.97.  *Id.* at 3-7.

Ambali's Uber income, particularly during the commission of the charged offenses in 2020 and 2021, is inconsistent with expenditures that appear in his inbox.  For instance, based on order confirmation emails, Ambali regularly shopped online at YOOX, a retailer for clothing and shoes by designers such as Dolce & Gabbana.  During a one-year period

United States' Sentencing Memorandum - 4
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

during which Ambali earned his highest Uber income, between November 2018 and September 2019, Ambali placed five YOOX orders that totaled US$1,309.44.  Ex. B at 1-16.  In contrast, over a three-month period between June and September 2020, Ambali placed six YOOX orders for designer clothing and shoes that totaled US$6,641.60, or over half of his total Uber income for 2020.  *Id.* at 16-36.  Additionally, despite Ambali's negligible Uber income in 2021, in April 2022, he financed a 2022 Lexus SUV for approximately US$56,000 with monthly payments of approximately US$400.  Ex. C.

Although Ambali did not earn significant income from Uber in 2020 and had minimal earnings in 2021, his spending increased exponentially while he submitted over 630 fraudulent pandemic unemployment claims to the United States using the stolen identities of American workers.  Between May and September 2020 alone, while he bought more than US$6,000 worth of designer clothes and shoes, Ambali submitted approximately 300 fraudulent claims.

**D.     Ambali Continued His Fraudulent Activities Until His Arrest.**

Incident to Ambali's arrest, federal agents lawfully seized and searched his personal cell phone.  The contents of the phone show that the scope of Ambali's fraudulent conduct was broad, and he continued the criminal activities until his arrest in Frankfurt, Germany on February 21, 2023.  *See* Ex. D, FBI Report re Evidence Item 1B60 – Apple iPhone XR (Oct. 13, 2023).

Ambali was an active user of Telegram and was a participant in at least one channel that instructed more than 18,000 followers how to defraud various United States government programs.  PSR at ¶¶ 22-23.  The channel, which was administered by a user with the handle "@LarryLarry07," provided step-by-step tutorials for how to make the fraudulent submissions, instructions on how to mask IP addresses to evade detection, and how to purchase stolen personal identifying information of American residents.  *Id.*; *see, e.g.,* Ex. E.

United States' Sentencing Memorandum - 5
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Ambali also used the Telegram direct messaging function to communicate with other fraudsters.  For instance, in October 2021, Ambali used Telegram's direct messaging function to purchase stolen personal identifying information of New York residents in order to defraud the New York Excluded Workers Fund, a pandemic assistance program intended to assist workers who did not qualify for unemployment benefits most often due to immigration status.  Ex. D at 5-8.

In January 2023, a month before Ambali's arrest, in a WhatsApp exchange, Ambali received personal identifying information with financial accounts for multiple individuals. Although it is difficult to decipher the contours of the scam, Ambali and the other party discuss the number of people involved in the fraud and whether or not the information should be used.  Ex. D at 20-22.

Ambali's web history on his phone included searches for ESD's login page to access unemployment benefit applications.  Amabli first searched for this website on or about May 5, 2020, two days before his first fraudulent submission to ESD, and he most recently visited the page on February 20, 2023, the day before he was arrested and last had access to his devices. Ex. D at 4.  In other words, it is possible that Ambali—who had never even stepped foot in the United States much less worked in Washington State—was defrauding ESD until the day before his arrest last year.

## II.    PROCEDURAL HISTORY

On January 25, 2023, the Grand Jury returned a 17-count indictment charging Ambali and his co-defendant Fatiu Ismalia Lawal with conspiracy (Count 1), in violation of 18 U.S.C. § 1349; wire fraud in connection with a presidentially declared emergency or major disaster (Counts 2-11), in violation of 18 U.S.C. §§ 1343 and 2; and aggravated identity theft (Counts 12-17), in violation of 18 U.S.C. § 1028A.  Dkt. 1.

On February 21, 2023, German authorities arrested Ambali pursuant to the warrant in this case, and Ambali remained in custody until Germany granted the United States'

United States' Sentencing Memorandum - 6
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

request to extradite him to this district in July 2023.  Ambali made his initial appearance in this district on August 18, 2023, and has been detained since then.

On December 18, 2023, Ambali pled guilty to Counts 5 (wire fraud) and 15 (aggravated identity theft).

### III.    SENTENCING GUIDELINES CALCULATIONS

The United States agrees with the Probation Office on the Sentencing Guidelines calculations and has no objections to the facts contained in the PSR.

The following calculation applies for Count 5 (wire fraud):

| Item | Guideline | Adjustment |
|---|---|---|
| Base Offense | 2B1.1(a)(1) | +7 |
| Intended Loss in Excess of $550,000 | 2B1.1(b)(1)(H) | +14 |
| 10 or More Victims | 2B1.1(b)(2) | +2 |
| Sophisticated Means | 2B1.1(b)(10) | +2 |
| Disaster Benefits | 2B1.1(b)(12) | +2 |
| Acceptance | 3E1.1 | -3 |
| Zero-Point Offender | 4C1.1 | -2 |
| **Total** | | **22** |

*See* PSR at ¶¶ 29-42.

For Count 15 (aggravated identity theft), the Guideline range is the minimum required by statute, two years, which must run consecutive to Count 5.  USSG § 2B1.6; *see* PSR at ¶ 28.

The defendant's criminal history category is I.  PSR at ¶ 45.  The resulting Guidelines range is 41 to 51 months for Count 5 (wire fraud) and a mandatory consecutive sentence of 24 months imprisonment for Count 15 (aggravated identity theft).

United States' Sentencing Memorandum - 7
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## IV.    FACTORS RELATED TO SENTENCING RECOMMENDATION

2        The United States recommends that the Court impose a total term of imprisonment

3  of 60 months.

4        For the reasons set forth below, this recommendation is appropriate given "the

5  nature and circumstances of the offense," and the need for the sentence "to reflect the

6  seriousness of the offense, to promote respect for the law, and to provide just punishment

7  for the offense," to ensure adequate general deterrence, and "to protect the public from

8  further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C).

9
## A.    The Nature and Circumstances of the Offense—Rufai's Exploitation of Three
10       Disaster Periods in the United States is an Aggravating Factor.

11       Because four years have lapsed since the onset of the COVID-19 pandemic, it is

12 easy to forget the chaotic, desperate, and dire circumstances facing our nation and our

13 government's attempts to stem the catastrophic economic impact of the first six months of

14 the COVID-19 pandemic.  In March 2020, schools, businesses, and restaurants abruptly

15 shuttered, and hospitals were overwhelmed with patients dying of COVID-19.[1]  Yet,

16 Ambali saw the pandemic and its consequences not as a public health catastrophe but as an

17 opportunity to enrich himself through fraud.

18       As Ambali began executing his scheme to use stolen identities of American workers

19 to file fraudulent unemployment claims in May 2020, approximately 20.6 million

20 American were unemployed, far surpassing the Great Recession's peak of 15.2 million in

21 2009.[2]  American business owners saw their livelihoods vanish overnight.  In fact, a survey

22 in April 2020 showed that 43 percent of small businesses in the nation had at least

23

24

---

25 [1] *See, e.g.,* Ariana Cha, "Faced with a crush of patients, besieged NYC hospitals struggle with life-or-death decisions," *The Washington Post* (Mar. 31, 2020), *available at*
26 https://www.washingtonpost.com/health/2020/03/31/new-york-city-hospitals-coronavirus/.
[2] U.S. Bureau of Labor Statistics, "Unemployment Rises in 2020, as the country battles the COVID-19 pandemic"
27 (June 2021), *available at* https://www.bls.gov/opub/mlr/2021/article/unemployment-rises-in-2020-as-the-country-battles-the-covid-19-pandemic.htm.

United States' Sentencing Memorandum - 8                        UNITED STATES ATTORNEY
*United States v. Sakiru Ambali*, CR23-5034-RJB-02                700 STEWART STREET, SUITE 5220
                                                                  SEATTLE, WASHINGTON 98101
                                                                  (206) 553-7970

1  temporarily closed, which was unprecedented in our nation's history and a far more severe
2  economic impact than the 1918 influenza.[3]

3        During major disasters and nationwide emergencies, it is particularly important for
4  the government to be able to disburse aid quickly to real victims to mitigate the impact of
5  the crisis.  The actual monetary loss to the government comes secondary to the fact that a
6  real person or business behind each stolen identity had difficulty accessing assistance
7  because a fraudulent claim was already paid in their identity.  These difficulties were
8  further compounded by the onslaught of fraudulent claims that clogged the infrastructure
9  in place distribute the aid.   The estimated loss from these fraudulent pandemic
10 unemployment claims is over $100 billion.[4]

11       In this case, Ambali used the stolen identities of over 630 real individuals who may
12 have qualified for pandemic assistance and may have needed it urgently.  Ambali's earliest
13 submissions to ESD began within two months of the President's declaration of a national
14 emergency.  By then, ESD had been flooded with imposter claims like Ambali's, and
15 approximately a week after his first submissions, on May 13, 2020, ESD was forced to halt
16 all benefit payments to more than a million people for three days.[6]  Ambali had experience
17 using stolen American identities to commit fraud before the pandemic, but this time, his
18 criminal conduct contributed to victimizing even people whose identities he did not steal and
19 urgently needed assistance that could not be disbursed because of criminals like Ambali.

20       Notably, both Congress and the Sentencing Commission have endorsed sentencing
21 enhancements during national emergencies and major disasters.  *See* 18 U.S.C 1343
22 (increases maximum penalties to 30 years imprisonment and $1 million fine); USSG §

23

24

25 [3] Alexander Bartik, et al., "How Are Small Businesses Adjusting to COVID-19? Early Evidence From a Survey,"
   *Nat'l Bureau of Economic Research* (Apr. 2020), at 3, 8, *available at*
   https://www.nber.org/system/files/working_papers/w26989/w26989.pdf.
26 [4] U.S. Gov't Accountability Ofc, "More Fraud Has Been Found in Federal COVID Funding – How Much Was Lost
   Under Unemployment Insurance Programs" (Sept. 13, 2023), *available at* https://www.gao.gov/blog/more-fraud-
   has-been-found-federal-covid-funding-how-much-was-lost-under-unemployment-insurance-
27 programs#:~:text=In%20our%20new%20report%2C%20we,paid%20out%20during%20the%20pandemic.

2B1.1(b)(2)(12) (two-level increase applied for offenses involving disaster fraud). Congress enacted the enhanced statutory penalty for wire (and mail) fraud in response to reports of widespread fraud and abuse in connection to disaster funds disbursed for Hurricanes Katrina and Rita. The Senate Judiciary Committee report noted:

> We want to help ensure that federal money goes to the right people and does not get stolen by criminals posing as victims. Congress wants to provide appropriate recovery and relief resources to affected States, and also ensure that these resources are protected and distributed only to the real victims–not to individuals seeking to take advantage of the disaster.

Senate Report No. 110-69, 110th Cong., 1st Session (May 22, 2007).

In this case, there are no circumstances under which Ambali—a Canadian citizen and Nigerian citizen—was a real victim. Rather, he was a criminal seeking to take advantage of our nation's crisis.

**B.      A Substantial Term of Imprisonment is Necessary to Deter and is Just Punishment for the Offense.**

The impact the sentence in this case has on general deterrence cannot be overstated. Media in Nigeria and Canada have covered the legal developments in this case. *See, e.g.,* Abby O'Brien, "Toronto men defrauded U.S. government of more than $2M using 'thousands' of stolen identities: investigators," CP24 (Jan. 4, 2024), *available at* https://www.cp24.com/news/toronto-men-defrauded-u-s-government-of-more-than-2m-using-thousands-of-stolen-identities-investigators-1.6710612?cache=%2F7.323885. Kehinde Folarin, "Two Nigerians risk 32 years in jail for allegedly defrauding US of $25m COVID benefits," *Politics Nigeria* (Aug. 19, 2023), *available at* https://politicsnigeria.com/two-nigerians-risk-32-years-in-jail-for-allegedly-defrauding-us-of-25m-covid-benefits/. Additionally, in 2022, the Telegram channel Ambali and his co-conpsirator participated followed had over 18,000 subscribers. *See, e.g.,* Ex. E.

The evidence in this case confirms that there are thousands of individuals around the world will steal American identities to perpetrate fraud against the United States. When

United States' Sentencing Memorandum - 10
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  those criminals read the sentence imposed on Ambali, it must be substantial enough to

2  deter them from further illegal activity and underscore that they are not beyond the reach

3  of the United States judicial system.

4  　　Moreover, because it is not a secret that extraterritorial monetary judgments are

5  difficult to enforce and Probation will not be able to monitor Ambali's behavior after

6  deportation, a significant term of imprisonment may be the only assured punishment

7  available to hold Ambali accountable for exploiting a time of crisis in the United States.

8  **C.    A 60-Month Term of Imprisonment Would Be Consistent with Sentences**
9  **       Imposed for Similar Conduct.**

10  　　The crimes Ambali committed and the circumstances under which he committed

11  them are nearly identical to Abidemi Rufai, who was sentenced to 60 months in prison by

12  the Honorable Benjamin H. Settle in September 2022.  *See United States v. Rufai*, Dkt. 56,

13  Judgment, CR21-5186-BHS (Sept. 26, 2022).  Like Ambali, Rufai is a Nigerian citizen

14  who had a history of committing fraud against the United States prior to the pandemic.  *Id.*,

15  Dkt. 54, United States' Sentencing Memorandum at 6-7.  Like Ambali and his co-

16  conspirator, Rufai was also in possession of thousands of stolen American identities that

17  he primarily used to file fraudulent pandemic unemployment claims but also used to file

18  applications for small business assistance and U.S. tax returns seeking refunds.  *Id.* Dkt. 54

19  at 7-9.  Although Rufai had aggravating factors in his history and characteristics because

20  he was a Nigerian state official, the number of claims he filed and the amount of loss he

21  caused was significantly less than Ambali.  Whereas Rufai filed approximately 238

22  fraudulent pandemic unemployment claims and caused a total loss of approximately

23  $600,000, Ambali filed over 630 fraudulent pandemic unemployment claims and cause

24  dover $1 million in loss.

25  　　Accordingly, sentencing Ambali to 60 months of imprisonment would be

26  appropriate and avoid a sentencing disparity with a similarly situated defendant.

27

United States' Sentencing Memorandum - 11
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

### V.    CONCLUSION

2

The Court should sentence Ambali to 60 months of imprisonment and the special

3

conditions recommended by Probation, including, upon deportation, prohibiting reentry

4

into the United States without permission of the Department of Homeland Security.  The

5

Court should further order restitution in the amount of $1,035,107, as agreed upon in the

6

Plea Agreement.

7

Dated: March 7, 2024

8

Respectfully submitted,

9

TESSA M. GORMAN
United States Attorney

10

11

*/s/ Cindy Chang*
CINDY CHANG

12

Assistant United States Attorney

13

United States Attorney's Office
700 Stewart Street, Suite 5220

14

Seattle, Washington 98101-1271

15

Phone: 206-553-7970
Fax: 206-553-0582

16

Email: Cindy.Chang@usdoj.gov

17

18

19

20

21

22

23

24

25

26

27

United States' Sentencing Memorandum - 12
*United States v. Sakiru Ambali*, CR23-5034-RJB-02

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970